**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| GUADA TECHNOLOGIES LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 2:16-cv-01153-RWS-RSP |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| NETFLIX, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| GUADA TECHNOLOGIES LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 2:16-cv-01154-RWS-RSP |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| PANDORA MEDIA, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| GUADA TECHNOLOGIES LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 2:16-cv-01159-RWS-RSP |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| SPOTIFY USA INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

**DEFENDANTS NETFLIX, INC., PANDORA MEDIA, INC., AND**
**SPOTIFY USA INC.'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

                                                                                            **Page**

I.    INTRODUCTION ................................................................................1

II.   STATEMENT OF THE ISSUES TO BE DECIDED ......................................................2

III.  BACKGROUND ................................................................................2

IV.   LEGAL STANDARDS ................................................................................6

      A.    Patent-Eligibility Under Section 101 ..................................................6

      B.    Motion to Dismiss ................................................................................7

      C.    Patent-Eligibility Under Section 101 is Ripe for Determination..........................7

V.    ARGUMENT ................................................................................8

      A.    The Asserted Claims are Directed to an Abstract Idea .................................9

            1.    The asserted claims are directed to the abstract idea of
                  using a keyword to navigate a hierarchy. .................................9

            2.    The claims of the '379 patent are similar to those
                  routinely found to be abstract by the Federal Circuit and
                  courts throughout the country. ..........................................12

                  a)    Claims related to information management and
                        organization are found abstract...................................12

                  b)    Claims that recite limitations in purely functional
                        terms are found abstract. ........................................13

                  c)    Claims that apply a well-known or fundamental
                        concept are found abstract........................................14

                  d)    Claims that fail to recite any hardware limitations
                        are found abstract...................................................17

      B.    The Asserted Claims Fail to Recite an Inventive Concept.................................18

            1.    The asserted claims recite well-known, conventional
                  elements. ...............................................................18

      C.    The Asserted Claims are Unduly Preemptive....................................................21

VI.   CONCLUSION ................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266 (Fed. Cir. 2016).......... 13, 14, 18

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 109 F. Supp. 3d 916, 944 (W.D. Tex. 2015), *aff'd*, 838 F.3d 1253 (Fed. Cir. 2016)..........................................................21

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016)...................8, 13

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014)..........................................*passim*

*Apple, Inc. et al. v. Ameranth, Inc.*, Case Nos. 2015-1703, -1704, -1792, -1793, slip op. (Fed. Cir. Nov. 29, 2016)..............................................................................*passim*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................................7

*Bilski v. Kappos*, 561 U.S. 593 (2010)...............................................................................7, 18

*C.C. Port, Ltd. v. Davis-Penn Mortgage Co.,* 61 F.3d 288 (5th Cir. 1995)..................................7

*Callwave Commc'ns, LLC v. AT&T Mobility*, No. CV 12-1701-RGA, 2016 WL 4941990 (D. Del. Sept. 15, 2016)...................................................................................13

*Clear with Computers LLC v. Altec Indus. Inc.*, 636 F. App'x 1015 (Fed. Cir. 2016) ....................................................................................................................................8

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014)....................................................................................21

*Cyberfone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710 (D. Del. 2012), *aff'd*, *Cyberfone Sys.*, 558 F. App'x 988 (Fed. Cir. 2014).........................................................8

*Cyberfone Sys., LLC v. CNN interactive Grp., Inc.*, 558 F. App'x 988 (Fed. Cir. 2014).......................................................................................................................8

*DATATRAK Int'l, Inc. v. Medidata Sols., Inc.*, No. 1:11-cv-458, 2015 U.S. Dist. LEXIS 151039 (N.D. Ohio Nov. 6, 2015).......................................................................12

*DealerTrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012)......................................................11

*Diamond v. Diehr*, 450 U.S. 175 (1981) .................................................................................18

*Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) ............... 12, 14, 19, 21

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) ...............................................12

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, 161 F. Supp. 3d 438 (E.D. Tex. 2015)..................................................................................................................11

*FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089 (Fed. Cir. 2016) .......................... 8, 9, 15

*Grisham v. United States,* 103 F.3d 24 (5th Cir. 1997) ...............................................................7

*HealthTrio, LLC v. Aetna, Inc.*, No. 12-cv-03229-REB-MJW, 2015 U.S. Dist.
LEXIS 87598 (D. Colo. June 17, 2015) .........................................................................22

*In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016) .....................................15

*Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016) ............ 14, 17, 18

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829 (E.D.
Tex. 2014) ........................................................................................................................23

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012)...........................18

*Mirror Worlds Techs., LLC v. Apple Inc.*, No. 6:13-cv-419, 2015 WL 6750306
(E.D. Tex. July 7, 2015)....................................................................................................9

*Norris v. Hearst Trust*, 500 F.3d 454 (5th Cir. 2007) ...............................................................11

*OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015) (Mayer, J.,
concurring) .........................................................................................................................7

*Open Text S.A. v. Box, Inc.*, 78 F. Supp. 3d 1043 (N.D. Cal. 2015) ...........................................21

*Preservation Wellness Techs. LLC v. Allscripts Healthcare Sols.*, No. 2:15-CV-
1559-WCB, 2016 WL 2742379 (E.D. Tex. May 10, 2016) ....................................*passim*

*Rothschild Location Techs. LLC v. Geotab USA, Inc.*, No. 6:15-CV-682-RWS-
JDL, 2016 WL 2847975 (E.D. Tex. May 16, 2016) ..........................................................7

*Rothschild Location Techs. LLC v. Vantage Point Mapping, Inc.*, No. 6:15-CV-
682, 2016 WL 7049401 (E.D. Tex. Dec. 5, 2016) ........................................................17

*Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138 (Fed. Cir. 2016)............................7, 17

*Telinit Techs., LLC v. Alteva, Inc.*, No. 2:14-CV-369, 2015 WL 5578604 (E.D.
Tex. Sept. 21, 2015).................................................................................................. 16, 19

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) ......................................8, 10, 18

*Uniloc USA, Inc. v. E-MDS, Inc.*, No. 6:14-CV-00625-RWS, 2015 WL 10791906
(E.D. Tex. Aug. 19, 2015) .........................................................................................8, 13, 19

**STATUTES**

35 U.S.C. § 101............................................................................................................*passim*

**RULES**

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 1, 7, 8

## TABLE OF ABBREVIATIONS

| Guada Technologies LLC | Guada |
| --- | --- |
| Netflix, Inc. | Netflix |
| Pandora Media, Inc. | Pandora |
| Spotify USA Inc. | Spotify |
| Netflix, Pandora, and Spotify | collectively, Defendants |
| U.S. Patent No. 7,231,379 (No. 16-cv-01149, Dkt. No. 1-1; No. 16-cv-01153, Dkt. No. 1-1; No. 16-cv-01154, Dkt. No. 1-1; No. 16-cv-01159, Dkt. No. 1-1) | the '379 patent or the asserted patent |
| 35 U.S.C. § 101 | Section 101 |
| *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) | *Alice* |

Defendants Pandora, Netflix, and Spotify hereby move this Court to dismiss the complaint filed by Guada in the above-captioned case under Federal Rule of Civil Procedure 12(b)(6) because the claims of the '379 patent are patent-ineligible under 35 U.S.C. § 101. More specifically, the '379 patent claims are directed to the abstract idea of using a keyword to navigate a hierarchy and fail to recite any inventive concept. Guada's complaint, therefore, fails to state a claim upon which relief can be granted.

## I.      INTRODUCTION

The claims of the '379 patent are directed to nothing more than the abstract idea of using a keyword to navigate a hierarchy. Supreme Court, Federal Circuit, and this district's precedent prescribe only one conclusion—the claims of the '379 patent fail to recite patent-eligible subject matter and are invalid pursuant to Section 101.

The '379 patent tells us that it covers "a method for navigating efficiently and naturally through a series of choices." This method, according to the specification, provides a convenience by allowing a user to jump to the appropriate node in a hierarchy by using a keyword, rather than requiring strict hierarchical navigation. The '379 patent admits that this idea has broad applicability in a wide variety of decision-making contexts and points to familiar examples of menu trees, including a telephone airline information system, a file system browser, and a simple roadmap. No particular application is required. Like an index in the back of a book, the idea at the heart of the '379 patent allows users to get to desired information more efficiently by jumping to a selection. In other words, the '379 patent claims a functionality as basic as a book index: rather than proceeding sequentially through available information, the user can skip to the appropriate "node" by looking up the keyword.

The idea of the '379 patent—like so many found patent-ineligible before it—is claimed in purely functional terms and relates to convenience, not a technical problem that the patent

1

overcame.   The claims reflect the patent's ambitious breadth—they recite no particular technological environment, no implementation details, and no hardware components at all. Instead, the claims use functional terms to recite a method that can be performed in any menu tree, whether it is computerized or not.

At its heart, the '379 patent is not directed to a technology-based solution, but rather an abstract idea that applies well-known practices such as keyword searching, an index, and a thesaurus to the process of navigating a hierarchy.   Its aim is to make the process of navigating through a hierarchical series of choices more natural and less frustrating for users—not to improve the way computers operate or to otherwise advance technology.   The claims of the '379 patent impermissibly preempt the use of keywords to navigate a hierarchy.   As claimed in the '379 patent, the abstract idea of using a keyword to navigate a hierarchy is just that—an idea divorced from any particular application—and nothing more.   Accordingly, because the '379 patent claims are directed to an abstract idea and lack an inventive concept, they are patent-ineligible under Section 101.

## II.     STATEMENT OF THE ISSUES TO BE DECIDED

This motion asks the Court to decide the threshold issue of whether Guada's complaints in the above-captioned cases should be dismissed because the claims of the asserted patent are patent-ineligible under Section 101.

## III.    BACKGROUND

On October 14, 2016, Guada filed the above-captioned lawsuits against Defendants, alleging infringement of the '379 patent.   Each complaint states that Defendants infringe "at least claim 1 of the '379 patent" and does not identify any other asserted claims.   *See, e.g.*, Case No.

16-cv-01159, Dkt. 1 at 4.[1]

The '379 patent, issued on June 12, 2007, purports to cover "a method for navigating efficiently and naturally through a series of choices" arranged in a hierarchy.  '379 patent at 2:23-24.  The '379 patent recites seven claims, all of which are method claims: two independent claims (claims 1 and 7) and five dependent claims (claims 2-6).  Absent any implementation or technological setting, claim 1 recites the '379 patent's navigational method consisting of three steps "performed in a system having multiple navigable nodes interconnected in a hierarchical arrangement": receiving user input identifiable with a keyword; identifying a node (other than the current node or a directly connected node) associated with that keyword; and jumping to the identified node.  *Id.* at 22:47-57.  In its entirety, claim 1 recites:

> 1. A method performed in a system having multiple navigable nodes interconnected in a hierarchical arrangement comprising:
>
> at a first node, receiving an input from a user of the system, the input containing at least one word identifiable with at least one keyword from among multiple keywords,
>
> identifying at least one node, other than the first node, that is not directly connected to the first node but is associated with the at least one keyword, and
>
> jumping to the at least one node.

Independent claim 7 is substantially similar to claim 1, differing primarily in its terminology with respect to nodes, which claim 7 refers to as "vertices."  *Id.* at 23:11-24:2.  In addition, claim 7 specifies that the user's input is received "as a response to a verbal description associated with a first vertex."  *Id.* at 24:3-4.  In other words, the user is presented with a "prompt" for input

---

[1] Guada filed separate actions against 7Digital Inc. (Case No. 16-cv-01147), Smule, Inc. (Case No. 16-cv-01158), Defy Media, LLC (Case No. 16-cv-01149), Reliance Majestic Holdings, LLC (Case No. 16-cv-01155), MLB Advanced Media, L.P. (Case No. 16-cv-01152), eMusic.com Inc. (Case No. 16-cv-01150), iHeartMedia, Inc. (Case No. 16-cv-01151), Batanga, Inc. (Case No. 16-cv-01148), Slacker, Inc. (Case No. 16-cv-01157), and Rhapsody International Inc. (Case No. 16-cv-01156, now closed).  This motion presents a common threshold issue that would resolve all cases.

when arriving at a particular node, such as "Would you like to make a reservation?" *Id.* at 4:32-41.   Otherwise, the method described in claim 7 is identical to claim 1—first identifying a keyword in the user's input and then "jumping" the user to the vertex corresponding to that keyword.  *Id.* at 23:11-24:11.  As with claim 1, claim 7 does not recite any elements related to implementation or a particular technological setting; it can be performed in any "arrangement of nodes representable as a hierarchical graph." *Id.* at 23:11-12.

As evidenced by the independent claims, the patent contemplates a method for using keywords to move through a "menu" of options represented by "nodes" or "vertices" arranged in a hierarchical tree pattern, *i.e.*, a "menu tree." *See id.* at 3:5-28.  As stated by the patent, it can be practiced in anything that "incorporate[s] some hierarchical navigation aspect as part of its operation." *Id.* at 4:4-5.  The process contemplated by the patent comprises "receiving an input containing at least one word identifiable with at least one keyword, identifying at least one node . . . associated with the at least one keyword, and jumping to the identified node." *Id.* at Abstract.  The '379 patent explains that keywords are descriptive words "that are deemed to be of importance" with respect to each "node" or "vertex." *Id.* at 4:32-37.  "By making use of these associations the 'tree' can be negotiated by allowing presentation of relevant verbal descriptions for the nodes associated with a term, irrespective of where in the hierarchy they are, thereby causing a 'jump' to a particular node without necessarily traversing the tree in the rigid hierarchical manner." *Id.* at 5:8-12.  This technique purportedly "eliminates the necessity for making many choices," thereby "creat[ing] a method for navigating efficiently and naturally through a series of choices to obtain information, perform transactions, or accomplish some similar goal." *Id.* at 2:22-25, 3:33-34.

The patent presents several disparate exemplary uses for this navigational method,

including "an enhanced and more efficient 'Find' function or file system browser for personal computer operating systems, a navigation system for television program listing, document management or retrieval systems, a 'geographic information system' in an automobile that allows location of addresses or business(es) meeting certain criteria," or any other systems that "incorporate some hierarchical navigation aspect as part of its operation." *Id.* at 3:63-4:5; 5:13-22 (listing exemplary uses of navigating through hierarchically organized data files, pattern analysis, and image processing). As one frequently-used example, Figure 6 shows a decision tree for an automated airline voice response system. *Id.* at Fig. 6, 13:32-60.

The '379 patent does not describe any new or unconventional hardware or network arrangement needed to implement the claimed navigational method. *See id.*, *passim.* Nor does the '379 patent purport to improve the functionality of any computer or device. *Id.* Rather, the specification explains that the disclosed navigational method "is applicable to a wide range of different networks, which can be mathematically represented by graph structures consisting of vertices and edges," each of which would require vastly different implementations. *Id.* at 3:59-63. The specification is silent as to the implementation details of each such "suitable application." *Id.* Further, the specification sets forth that the invention is not any particular application or implementation of the described navigational method, but simply the idea of relating keywords to nodes in the hierarchy to enable more efficient navigation: "the important aspect relative to the invention [is] the relationship among certain words and the node(s) in which they occur and, where applicable, the relationship between certain words . . . not the data structure or its form or format whereby that information is kept or maintained." *Id.* at 5:32-38. The specification is, in fact, replete with caveats noting that the exemplary software implementation for one particular application is not limiting or essential to the invention. *See,*

*e.g.*, 16:17-21 (noting exemplary implementation should not "be implied or considered required"); 22:16-45 (stating examples simply illustrate "the principles of the invention").

Dependent claims 2-6 depend from claim 1. These claims can be divided into three groups of additional conveniences to complement the navigational method described in the patent. First, claim 2 recites providing a prompt or "verbal description" of at least the first node to the user—as in claim 7. *Id.* at 22:58-60. Second, claims 3 and 4 are related to "a simple thesaurus . . . so that a synonym of a keyword may also be used by the system to jump to the desired nodes in the graph." *Id.* at 8:5-8; 22:61-67. Claims 5 and 6 are related to a feature whereby "an initially unknown word (i.e., a word that is neither a keyword nor a thesaurus word) can be learned by the system and added to a thesaurus for future use." *Id.* at 9:4-6, 23:1-10. The dependent claims refer to no hardware component or implementation detail, referring only to general desired functions such as use of a thesaurus and learning unknown words.

## IV.     LEGAL STANDARDS

### A.      Patent-Eligibility Under Section 101

Pursuant to Section 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefore." 35 U.S.C. § 101. Section 101 is limited and patent rights do not cover "laws of nature, natural phenomena, and abstract ideas." *Alice*, 134 S. Ct. at 2355. In *Alice*, the Supreme Court established a two-step framework for determining patent-eligibility under Section 101: (1) determine whether the claims are "directed to" a patent-ineligible abstract idea; and (2) if so, consider the elements of the claims—both individually and as ordered combinations—to assess whether the additional elements transform the nature of the claims into a patent-eligible application of the abstract idea. *See id.* at 2350. The inquiry focuses on the claims of the patent. *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed.

Cir. 2016) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves.").

### B.      Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the legal sufficiency of the claims advanced in the complaint at an early stage of litigation. *See Grisham v. United States,* 103 F.3d 24, 25-26 (5th Cir. 1997).

A complaint must contain sufficient factual matter "to state a claim of relief that is plausible on its face" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Taking the facts alleged in the complaint as true, if it appears certain that the plaintiff cannot prove any set of facts that would entitle it to the relief it seeks," dismissal is proper. *C.C. Port, Ltd. v. Davis-Penn Mortgage Co.,* 61 F.3d 288, 289 (5th Cir. 1995).

### C.      Patent-Eligibility Under Section 101 is Ripe for Determination

Where patent infringement is alleged, a threshold determination that the patent is ineligible for patenting justifies dismissal under Rule 12(b)(6) because there exists no set of facts upon which the plaintiff could plausibly state a claim for relief. *See, e.g.*, *Rothschild Location Techs. LLC v. Geotab USA, Inc.*, No. 6:15-CV-682-RWS-JDL, 2016 WL 2847975, at \*2 (E.D. Tex. May 16, 2016) (granting motion to dismiss and stating that "when patent claims on their face are plainly directed to an abstract idea, a court may properly assess patent-eligibility under § 101 at the pleading stage"). As stated by the Supreme Court, patent-eligibility under Section 101 is a "threshold test." *Bilski v. Kappos*, 561 U.S. 593, 602 (2010); *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015) (Mayer, J., concurring) ("Addressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted claim construction litigation, it also works to stem the tide of vexatious suits brought by owners of vague and overbroad patents.").

Accordingly, the Federal Circuit has repeatedly upheld district court decisions finding patent claims ineligible in response to motions brought under Rule 12(b)(6).  *See, e.g., FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089 (Fed. Cir. 2016) (affirming Rule 12(b)(6) determination of patent-ineligibility); *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016) (same); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 711 (Fed. Cir. 2014) (same); *see also Clear with Computers LLC v. Altec Indus. Inc.*, 636 F. App'x 1015 (Fed. Cir. 2016) (Rule 36 judgment affirming dismissal under Rule 12(b)(6)).

"There is no requirement that the district court engage in claim construction before deciding § 101 eligibility."  *Cyberfone Sys., LLC v. CNN interactive Grp., Inc.*, 558 F. App'x 988, 991 n.1 (Fed. Cir. 2014).  Where, as here, "it is clear that claim construction would not affect the issue of patent eligibility, there is no requirement that the court go through that exercise before addressing the eligibility issue."  *Preservation Wellness Techs. LLC v. Allscripts Healthcare Sols.*, No. 2:15-CV-1559-WCB, 2016 WL 2742379, at *6 (E.D. Tex. May 10, 2016); *see also FairWarning IP*, 839 F.3d at 1098 ("Regardless of the resolution of this construction issue, the '500 patent claims patent-ineligible subject matter.").  Where there is no reasonable claim construction that would alter the patent-eligibility analysis, the issue of patent-eligibility is ripe for determination at this stage.  *See Uniloc USA, Inc. v. E-MDS, Inc.*, No. 6:14-CV-00625-RWS, 2015 WL 10791906, at *3 (E.D. Tex. Aug. 19, 2015) ("Such *ipse dixit* statements do not establish that claim construction is necessary prior to ruling on a § 101 motion."); *Cyberfone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 715 (D. Del. 2012), *aff'd, Cyberfone Sys.*, 558 F. App'x 988 (Fed. Cir. 2014) (stating because "plaintiff did not explain how claim construction might alter [the court's Section 101] analysis. . . . the court concludes that it may proceed without the benefit of claim construction").

## V.    ARGUMENT

## A.    The Asserted Claims are Directed to an Abstract Idea

At step one of the *Alice* test, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter"—in this case, an abstract idea. *FairWarning IP*, 839 F.3d at 1094.  In particular, "considering the claim's purpose . . . can be useful in finding the abstract idea."  *Mirror Worlds Techs., LLC v. Apple Inc.*, No. 6:13-cv-419, 2015 WL 6750306, at *8 (E.D. Tex. July 7, 2015).  In light of this guidance, the language of the '379 patent claims, the patent specification, and statements made by the patent applicant demonstrate that every claim of the '379 patent is directed to the abstract idea of using a keyword to navigate a hierarchy.  Moreover, recent comparable Federal Circuit and district court decisions regarding similar data management and organization claims confirm that the abstract idea of using a keyword to navigate a hierarchy is patent-ineligible.

### 1.    The asserted claims are directed to the abstract idea of using a keyword to navigate a hierarchy.

Turning first to the claim language, all seven claims recite an abstract description of a navigation method, untethered to any application or any device.  Specifically, as discussed above, claim 1 of the '379 patent includes only three steps: receiving input containing a keyword, identifying a node associated with that keyword, and "jumping to the at least one node."  '379 patent at 22:47-57; *see also supra*, pp. 3-6.  The patent further makes clear that "nodes" represent possible choices in a hierarchically-arranged decision tree.  *See, e.g.*, *id.* at 4:24-26 ("The individual boxes 102-120 are referred to as 'nodes' and each represents a specific choice or option in the hierarchy."); 2:25-30 (stating that the invention is implemented in a "hierarchically configured decisional network"); 3:5-28 (explaining that vertices represent options).  Accordingly, claim 1 is directed to nothing more than using a keyword to navigate a hierarchy.  Independent claim 7 is directed to the same abstract idea, and recites only the steps of

receiving a user input, analyzing the input to identify a term that can be associated with a keyword, selecting a vertex based on that keyword, and "jumping to the vertex." *Id.* at 23:11-24:11. While this claim uses the term "vertex" instead of "node" to refer to possible choices, the patent explains that these terms are interchangeable. *See, e.g.*, *id.* at 2:5-7. ("[T]here will also be a combination of vertices or nodes in the graph that best represent or are closest to the goal the user is trying to accomplish."). Every aspect of the independent claims is therefore captured by the abstract idea to which they are directed: using a keyword to navigate a hierarchy.

Dependent claims 2-6 of the '379 patent, all of which depend from claim 1, are directed to the same abstract idea. These claims disclose nothing more than insubstantial elaborations on the abstract idea of using a keyword to navigate a hierarchy; they do not change the fundamental abstract idea underlying all claims of the '379 patent. *Preservation Wellness*, 2016 WL 2742379, at *27 (holding that "slight elaborations on the inventions set forth in claims 1 and 16 do not add enough to convert the claimed subject matter into a concrete application, rather than an abstract idea"). Specifically, claim 2 recites providing the user with a description of the current node—an expected convenience that simply facilitates the user's navigation. Claims 3 and 4 recite the use of a thesaurus that associates user input with synonymous keywords. '379 patent at 8:5. And claims 5 and 6 recite learning a new synonym when the user's input does not match known keywords or synonyms. While the dependent claims may "add a degree of particularity, the concept embodied by the majority of the limitations describes only the abstract idea." *Ultramercial*, 772 F.3d at 715; *see also Apple, Inc. et al. v. Ameranth, Inc.*, Case Nos. 2015-1703, -1704, -1792, -1793, slip op. at 25 (Fed. Cir. Nov. 29, 2016) ("These claims depend from independent claims which were found to be directed to unpatentable subject matter, as discussed above. Merely appending this preexisting practice to those independent claims does

not make them patentable."). Appending the method of claim 1 with these routine features and conveniences, recited exclusively in functional terms, fails to add concrete substance to the abstract idea of using a keyword to navigate a hierarchy.

While the focus of the Section 101 inquiry is on the claims themselves, *see DealerTrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012), the '379 patent specification and the statements made by the patent applicant during prosecution reinforce the abstract nature of the claims. First, the specification repeatedly underscores the fact that the focus of the claims is a method for "navigat[ing] a graph or tree in a way that allows them to skip from one vertex to another vertex." *See* '379 patent at 3:29-33; 2:22-25 ("The present invention creates a method for navigating efficiently and naturally through a series of choices to obtain information, perform transactions, or accomplish some similar goal."). As stated in the specification, the abstract idea of the claims can be used in a wide variety of settings, as long as they include "traversal through a hierarchy to a goal." *Id.* 5:15-22. The patent applicant made similar remarks during prosecution, stating that the claims are "specifically directed to a method of navigation in a system having multiple navigable nodes." *See* Ex. A,[2] Response to Non-Compliant Appeal Brief Pursuant to 37 C.F.R. § 41.37 (Nov. 2, 2006) at 3 (regarding claim 1); *id.* at 4 (regarding claim 7).[3] Accordingly, both the language of the claims and the intrinsic evidence make clear that the asserted claims are directed to an abstract idea: using a keyword to navigate a hierarchy.

---

[2] Exhibit A is attached to the Marder Decl., filed concurrently herewith.
[3] The Court may, and should, take judicial notice of the prosecution history of the '379 patent. Under Fifth Circuit precedent, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 (5th Cir. 2007). Further, courts routinely take judicial notice of a patent's file history. *See, e.g., Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, 161 F. Supp. 3d 438, 452 n.6 (E.D. Tex. 2015).

2.      **The claims of the '379 patent are similar to those routinely found to be abstract by the Federal Circuit and courts throughout the country.**

Because the Supreme Court has declined to "delimit the precise contours of the 'abstract ideas' category" of exceptions to patent eligibility, *Alice*, 134 S. Ct. at 2357, "both [the Federal Circuit] and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). Analogous decisions from the Federal Circuit and a host of district court decisions reveal that courts frequently find claims similar to those of the '379 patent to be patent-ineligible.

a)      **Claims related to information management and organization are found abstract.**

First, claims concerning information management and organization are among those most commonly deemed to be abstract by courts. *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) ("The focus of the asserted claims, as illustrated by claim 12 quoted above, is on collecting information, analyzing it, and displaying certain results of the collection and analysis. We need not define the outer limits of 'abstract idea,' or at this stage exclude the possibility that any particular inventive means are to be found somewhere in the claims, to conclude that these claims focus on an abstract idea."); *see also DATATRAK Int'l, Inc. v. Medidata Sols., Inc.*, No. 1:11-cv-458, 2015 U.S. Dist. LEXIS 151039, at *9-10 (N.D. Ohio Nov. 6, 2015) (summarizing analogous decisions and concluding that "many courts addressing patents involving accessing and/or organizing data have concluded that these types of patents are directed at abstract ideas").

Here, as the '379 patent itself states, "[t]he present invention relates to information processing and, more particularly, computer based transaction processing," where "transaction" means "traversal through a hierarchy to a goal." '379 Patent at 1:7-9, 5:15-22. *See Uniloc USA,*

2015 WL 10791906, at *4 ("Mere organization of data, on a computer or otherwise, is abstract. . . . The fact that the data to be organized is medical information and the form of organization is a hierarchy does not change the abstract nature of the claim."); *see also Apple, Inc.*, Case Nos. 2015-1703, -1704, -1792, -1793, slip op. at 19 (finding claims that are directed to display and selection of menu items in hierarchical format to be patent-ineligible).   Accordingly, "the invention is very much in the mainstream of methods and systems for organizing human activity that have been held to constitute 'abstract ideas' in the Supreme Court's decisions in *Bilski* and *Alice* as well as lower court decisions applying the two-part *Alice* test." *Preservation Wellness*, 2016 WL 2742379, at *7.

### b)   Claims that recite limitations in purely functional terms are found abstract.

Second, courts are particularly skeptical of claims that are entirely functional in nature, like the claims of the '379 patent. *See Callwave Commc'ns, LLC v. AT&T Mobility*, No. CV 12-1701-RGA, 2016 WL 4941990, at *5 (D. Del. Sept. 15, 2016) ("The Federal Circuit has recently clarified that such functional, result-oriented claims are a hallmark of claims commonly found invalid under § 101.").   For example, in its *Affinity Labs* decisions, the Federal Circuit made clear that "claims [which] do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim" are directed to abstract ideas. *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016); *see also Affinity Labs v. DIRECTV*, 838 F.3d at 1258 ("There is nothing in claim 1 that is directed to ***how*** to implement out-of-region broadcasting on a cellular telephone.   Rather, the claim is drawn to the idea itself.").   Similarly, in the Federal Circuit's *Ameranth* opinion, it found that where "the claims are directed to certain functionality" and the "details are not recited in the actual claims," they are patent-ineligible under Section 101. *Apple, Inc.*, Case Nos. 2015-1703, -1704, -1792, -1793,

slip op. at 19, 21.  And in the recent *Preservation Wellness* decision, a court in this district found that claims were directed to an abstract idea where "[t]he underlying idea is simply the performance of that function, not a technological solution that enables that function to be performed in a particular manner." *Preservation Wellness*, 2016 WL 2742379, at *8 (noting that "[t]he limitations of claim 1, for example, are almost entirely functional in nature").

Like the claims found to be patent-ineligible in these cases, the '379 patent claims are recited in entirely functional terms.  Independent claims 1 and 7 simply recite functions such as "receiving an input," "identifying at least one node," and "jumping to the at least one node," without describing how—and by what means—these functions are accomplished.  The dependent claims are similarly deficient; they describe only the desired functions and their results.  As stated in the specification, these additional features are simply "concepts" and the implementation details are "irrelevant."  '379 patent at 5:31-38; 8:29-32; 9:3-6; *see also Affinity Labs v. Amazon.com*, 838 F.3d at 1271 ("The term . . . is not limited to any particular form of customization, but covers the general idea of customizing a user interface. . . . [T]he basic concept of customizing a user interface is an abstract idea.").  The asserted claims are therefore directed to an abstract idea.  *See Electric Power*, 830 F.3d at 1356 ("[T]he essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101.").

### c)     Claims that apply a well-known or fundamental concept are found abstract.

Third, courts have repeatedly found claims to be abstract when they merely apply a well-known concept to a new setting or technological context.  *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) (holding invalid a patent that "merely applies a well-known idea using generic computers" and stating that "[t]he Supreme Court and

we have held that a wide variety of well-known and other activities constitute abstract ideas."). For instance, in *Apple, Inc.*, the Federal Circuit found claims that adapt existing ideas to new technology abstract. *See Apple, Inc.*, Case Nos. 2015-1703, -1704, -1792, -1793, slip op. at 21-22 ("The claimed invention replaces a server's notepad or mental list with an electronic device programmed to allow menu items to be selected as a customer places an order. . . . It is not enough to point to conventional applications and say 'do it on a computer.'").  In addition, in *FairWarning IP, LLC v. Iatric Sys., Inc.*, the Federal Circuit found that the "claims merely implement an old practice in a new environment" and are therefore directed to an abstract idea. *Id.,* 839 F.3d at 1094.  Similarly, in *TLI*, the Federal Circuit determined that the asserted claims were directed to an abstract idea because they recited the use of "conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two."  *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016).  In other words, the claims applied a well-known practice to a particular technological setting, but this combination was neither difficult nor inventive.

Here, the claims of the '379 patent do not even apply the abstract idea they recite to a "nascent" environment—they simply add the well-known, fundamental concept of keyword searching to any arrangement of nodes in a hierarchy.  Just as a reader could look up the page numbers for a particular topic in a textbook's index rather than looking through its hierarchical table of contents, the claims of the '379 patent allow a user to "jump" to a node or vertex of interest rather than proceeding sequentially through a hierarchical arrangement.  The patent specification itself refers to the association between keywords and nodes as "an index."  '379 patent at 5:2-7.  Moreover, the asserted claims are even more egregious than those considered in

*FairWarning* and *TLI* because a hierarchical arrangement of nodes is not a technological setting, much less a "nascent" one; the '379 patent itself concedes that such menu trees are familiar concepts. '379 patent at 1:28-45. The concepts described in the dependent claims similarly recite familiar concepts. For example, claims 3-6 refer to a "simple thesaurus" used for the same purpose as any thesaurus—looking up synonyms for certain terms. *Id.* at 8:5-8; 8:1-4 ("Specifically, we can incorporate a thesaurus to accommodate synonyms for the keywords."). Using these well-known, fundamental concepts with a familiar decision tree does not render the otherwise abstract idea of the claims patent-eligible. *See Preservation Wellness*, 2016 WL 2742379, at *9; *Telinit Techs., LLC v. Alteva, Inc.*, No. 2:14-CV-369, 2015 WL 5578604, at *16 (E.D. Tex. Sept. 21, 2015) ("[C]laim 1 describes a well-known and widely-understood concept— making a telephone call—and then applies that concept to the Internet using conventional computer components as an intermediary to place and monitor the telephone calls.").

Notably, while the cases discussed herein, as well as scores of others from around the country, demonstrate that the claims of the '379 patent are directed to an abstract idea, they also reveal that these claims are outliers—even more abstract than those in *Apple, FairWarning* and *TLI*—for their failure to specify any technological context or environment at all. Instead, these claims have broad applicability to systems that can be represented as a "hierarchical arrangement" (claim 1) or a "hierarchical graph" (claim 7). Most of the broad, functional claims addressed by courts include at least a passing reference to generic hardware or structural components. *See, e.g., Telinit Techs.,* 2015 WL 5578604, at *17 ("Claim 1 does not contain any specific structural components—beyond a generic 'processor' and generic 'networks'—that remove it from the realm of an abstract idea."). These claims don't even have that. *See Rothschild Location Techs. LLC v. Vantage Point Mapping, Inc.*, No. 6:15-CV-682, 2016 WL

7049401, at *7 (E.D. Tex. Dec. 5, 2016) (upholding finding of patent-ineligibility where the patent fails to "describe a new server or any new physical component").

Instead, these claims are untethered to any particular application or hardware.  Rather, the specification consistently refers to claimed methods as concepts and ideas stemming from graph theory that could be applied broadly in a wide variety of contexts.  *See, e.g.*, '379 patent at 3:5-9; 3:59-63 ("It should be understood that the present invention is applicable to a wide range of different networks, which can be mathematically represented by graph structures consisting of vertices and edges and should not be considered to be limited to the particular application described.").  The claims reflect this conceptual breadth and are directed only to the abstract idea that is evident from the language of the patent: using a keyword to a hierarchy.   Indeed, "there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper."  *Intellectual Ventures I*, 838 F.3d at 1318.

### d)      Claims that fail to recite any hardware limitations are found abstract.

Finally, Federal Circuit precedent makes clear that claims simply reciting software functions with no reference to hardware are directed to abstract ideas.  Most recently, in *Synopsys, Inc. v. Mentor Graphics Corp*, the Federal Circuit upheld a district court's finding of patent-ineligibility where "the claims do not call for any form of computer implementation of the claimed methods."  *Id.*, 839 F.3d at 1149.  The Federal Circuit further noted that while the specification provided several exemplary uses for the claimed process, which covered the use of "control flow graphs" to translate hardware description language into hardware component descriptions of logic circuits, the claims themselves were "devoid of any reference to a computer or any other physical component"—just like the claims of the '379 patent.  *Id.* at 1147.  Accordingly, because the '379 patent claims fail to reference any hardware or physical

components, they too are directed to an abstract idea.

**B.    The Asserted Claims Fail to Recite an Inventive Concept**

**1.    The asserted claims recite well-known, conventional elements.**

The second step of the *Alice* test examines the elements of the claims, individually and as a combination, to determine whether they include an "inventive concept."  *See Alice*, 134 S. Ct. at 2355.  Applying this inquiry, the court must determine whether the claim elements "transform the claimed abstract idea into a patent-eligible application of the abstract idea."  *Apple, Inc.*, Case Nos. 2015-1703, -1704, -1792, -1793, slip op. at 22.   "When a claim directed to an abstract idea contains no restriction on how the result is accomplished . . . [and] [t]he mechanism . . . is not described, although this is stated to be the essential innovation, then the claim is not patent-eligible."  *Intellectual Ventures I*, 838 F.3d at 1316 (internal quotation marks and citation omitted); *see also Affinity Labs v. Amazon.com*, 838 F.3d at 1271 ("The features set forth in the claims are described and claimed generically rather than with the specificity necessary to show how those components provide a concrete solution to the problem addressed by the patent."). Elements that add only "insignificant postsolution activity" also fail to transform abstract ideas into patent-eligible inventions.  *See Bilski*, 561 U.S. at 611 (quoting *Diamond v. Diehr*, 450 U.S. 175, 191-92 (1981)); *see also Ultramercial*, 772 F.3d at 715 (finding claim that recites abstract idea must include "additional features" that are more than "well-understood, routine, conventional activity") (internal citations omitted); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012) (claim remains patent-ineligible if it describes only "'post-solution activity' that is purely 'conventional' or 'obvious'") (internal citations omitted).

None of the elements of the independent claims—when considered alone and in combination—provide an inventive concept sufficient to transform their abstract character into something significantly more than the abstract idea of using a keyword to navigate a hierarchy.

To the contrary, the independent claims recite only a generic process with no implementation details and no reference to *any* technology, much less an inventive concept.  *See Electric Power*, 830 F.3d at 1355 ("Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information.").

Specifically, claims 1 and 7 recite only generic information management functions— receiving an input, identifying a node associated with the keyword, and jumping to the node—at a high level of generality.  These functions can readily be performed by any conventional computer, or, moreover, even by a human looking at a decision tree with "possible choices" in a "hierarchical arrangement."  *See* '397 patent at 4:18-21; *see also e.g.*, *Telinit Techs.*, 2015 WL 5578604, at *17 ("[C]laim 1 does not direct the generic elements to a specific application beyond 'receiving,' 'identifying,' 'signaling,' 'monitoring,' or 'providing' information.  Consequently, claim 1 does not contain any transformative elements, either alone or in combination, that transforms its abstract idea into patentable subject matter."); *Uniloc*, 2015 WL 10791906, at *4 ("The 'receiving,' 'specifying,' and 'creating' steps amount to 'electronic recordkeeping,' which is a well-understood, routine, conventional computer function.").  To the extent that the claims of the '379 patent recite *any* environment, that claim 1 is "performed in a system having multiple navigable nodes interconnected in a hierarchical arrangement" and that claim 7 is similarly "performed in connection with an arrangement of nodes representable as a hierarchical graph" cannot supply the necessary inventive concept because, as the '379 patent specification notes, such arrangements are "familiar" and well-known concepts from graph theory.  *See* '379 patent at 1:40-47, 27-32 ("In modern mathematics, graph theory is used to study networks of hierarchical choices.  The hierarchical networks can be represented as a graph structure.  Graph

theory finds practical applications in chemistry, computer science, economics, electronics and linguistics."). Accordingly, the independent claims provide what the specification promises—"a method for navigating . . . through a series of choices," *id.* at 2:22-25—and nothing more and, therefore, do not recite an inventive concept.

The dependent claims likewise recite only well-known, conventional concepts at a high level of generality, whether considered alone or in combination with the elements of claim 1. Claim 2 recites "providing a verbal description" of a node, with "verbal description" defined as "a set of words relating to the subject matter [of the node] whether presented audibly or in written form." '379 patent at 1:50-54. This limitation is not inventive, and the specification itself lists this among the features known to exist in the prior art. *Id.* at 1:46-54. Claims 3 and 4 recite searching a "thesaurus" and identifying a synonym in the thesaurus. These claims cannot provide an inventive concept, as the specification makes plain that the claimed thesaurus is "simple" and no different from a standard, well-known thesaurus. *Id.* at 8:28-30; 8:3-4 ("[W]e can incorporate a thesaurus to accommodate synonyms for the keywords."). Claims 4 and 5 recite, at a high level of generality, adding new synonyms to the thesaurus if they are not already familiar "so that, when the word is input by a subsequent user, the word will be treated as synonymous with the at least one particular keyword." *Id.* at 23:7-10. This is the sort of result-oriented claiming that the Federal Circuit holds far short of the "inventive concept" requirement. *See Apple, Inc.*, Case Nos. 2015-1703, -1704, -1792, -1793, slip op. at 24. ("Generally, a claim that merely describes an 'effect or result dissociated from any method by which [it] is accomplished' is not directed to patent-eligible subject matter. . . . Here, the linked orders claim limitation calls for the desired result of associating a customer's order with said customer, and does not attempt to claim any method for achieving that result."). All of the dependent claims

recite functional limitations focused on "selection and manipulation of information"—a routine and well-known process that cannot be an inventive concept. *Electric Power*, 838 F.3d 1271 ("Merely requiring the selection and manipulation of information . . . by itself does not transform the otherwise-abstract processes of information collection and analysis.").

Therefore, nothing in the dependent claims—alone and in combination with the elements of independent claim 1—provides the necessary inventive concept to render these claims patent-eligible under Section 101. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) ("[A]ll of the additional limitations in the claims cited in CET's appeal brief recite well-known, routine, and conventional functions of scanners and computers.  Thus, while these claims may have a narrower scope than the representative claims, no claim contains an 'inventive concept' that transforms the corresponding claim into a patent-eligible application of the otherwise ineligible abstract idea.").  Accordingly, all claims of the '379 patent lack an inventive concept.

## C.     The Asserted Claims are Unduly Preemptive

Because the claims of the '379 patent fail both steps of the *Alice* test, they are not patent-eligible under Section 101.  Application of the *Alice* test also indicates that the claims of the '379 patent implicate serious preemption concerns, which are at the heart of Section 101 jurisprudence. *See Alice*, 134 S. Ct. at 2354 ("We have described the concern that drives this exclusionary principle as one of pre-emption."); *see also Open Text S.A. v. Box, Inc.*, 78 F. Supp. 3d 1043, 1049 (N.D. Cal. 2015) (stating that "preemption concern. . . is [] baked into the *Mayo/Alice* test").  Such concerns arise if the claims of a patent "would risk disproportionately tying up the use of the underlying ideas." *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 109 F. Supp. 3d 916, 944 (W.D. Tex. 2015), *aff'd*, 838 F.3d 1253 (Fed. Cir. 2016) (internal quotation marks omitted).  A patent disproportionately ties up the use of an abstract idea when it claims

21

"highly general processes for applying [Patent Owner's] creative insight" rather than a "specific technical process applying its creative idea." *HealthTrio, LLC v. Aetna, Inc.*, No. 12-cv-03229-REB-MJW, 2015 U.S. Dist. LEXIS 87598, at *19-20 (D. Colo. June 17, 2015).

The preemption concerns raised by the '379 patent are underscored by the manifest breadth of the claims and their wide applicability. Throughout the specification, the '379 patent admits that the alleged invention can be applied in far-ranging contexts, from computerized file searching to an automobile geographic information system to anything at all that "incorporate[s] some hierarchical navigation aspect." '379 patent at 3:59-4:5. The patent concedes that these applications will require differing implementations, which is "irrelevant" to the alleged invention underlying the patent. *Id.* at 4:12-17 ("Depending upon the particular implementation of the invention, one or more of the aspects may be used together in various permutations and/or combinations, with the understanding that different permutations and/or combinations may be better suited for particular applications or have more or less benefits or advantages than others."); 8:28-30 ("[T]he equating of terms can be done in any of a myriad of different ways, the exact implementation details of which however [a]re irrelevant to the invention."); 15:2-6 (stating that exemplary implementation is "not to be considered essential"); 16:18-21 ("[T]he order in different implementations may be different and may vary based upon the particular programmer, programming language and/or computer involved.") Rather, the alleged invention is the idea underlying the claims, "not the data structure or its form or format whereby that information is kept or maintained." *Id.* At 5:32-39. The patent claims therefore lack *any* implementation details and recite only the idea underlying the patent in entirely functional terms. Indeed, because the claims are recited as generic functions, any specific applications of the idea of using a keyword to navigate a hierarchy are effectively preempted. *See Loyalty Conversion*

*Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 845 (E.D. Tex. 2014) (stating that because the claimed methods are recited "in functional terms, they preempt any subsequent specific solutions to the problem at issue. . . . It is for those reasons that the Supreme Court has characterized such patents as claiming 'abstract ideas.'").

## VI.     CONCLUSION

For the foregoing reasons, the Court should grant the Motion to Dismiss and dismiss Guada's complaints in the above-captioned cases with prejudice.

Dated:  December 7, 2016                    Respectfully submitted,

                                            */s/ Stefani E. Shanberg*
                                            Stefani E. Shanberg
                                            Texas State Bar No. 24009955
                                            sshanberg@wsgr.com
                                            Jennifer J. Schmidt
                                            California State Bar No. 295579
                                            jschmidt@wsgr.com
                                            Eugene Marder
                                            California State Bar No. 275762
                                            emarder@wsgr.com
                                            Michael J. Guo
                                            California State Bar No. 284917
                                            mguo@wsgr.com
                                            WILSON SONSINI GOODRICH & ROSATI
                                            One Market Plaza
                                            Spear Tower, Suite 3300
                                            San Francisco, CA  94105

                                            *Attorneys for Defendants Netflix, Inc.; Pandora*
                                            *Media, Inc.; and Spotify USA Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 7th day of December, 2016.

*/s/ Jane Taylor*
Jane Taylor